Hall, Judge
 

 If a will he made before marriage, and the wife survive the husband, is it a republication? It is not to be controverted at the present day, that the marriage of a feme sole is in law a revocation of a will made by her,
 
 Loe
 
 v.
 
 Staple,
 
 (2
 
 Term R. 684.)
 
 though it is tobe remembered that the reason of this rule is not, as has been sometimes supposed, an
 
 incapacity
 
 of the feme to
 
 *299
 

 make
 
 a will, arising from tbe state of coverture. The rule proceeds on a well known maxim of the common law, .which deriving no support from the artificial refinements
 
 of
 
 technical reasoning, carries at once conviction to the understanding by the simple force of reason and truth. The truth is, that as a will is ambulatory, in other words, as it .may be altered or revoked to the very last moment of the testator’s existence, there must not only, be a capacity to devise at the time of
 
 making,
 
 but also at the time of consummating the will, viz. at the death of the testator. Now as tbe wife could not control her property after marriage, no matter what events might render it necessary, there is a propriety in annulling entirely any. distribution made of her property; lest if supported, or not annulled, it might contravene her wishes in its subsequent disposition, founded on events arising during coverture: for if there be reason in permitting a feme sole to exercise her understanding in making or altering a will, equal reason is there that when the law declares that by marriage she has technically lost understanding, if I may so speak, to make or alter a will, she shall not be prejudiced by an adherence to that already made; she shall be intestate. • •
 

 But the question now presented, is not as to the effect of marriage on the will of a feme sole,1 but as to the effect produced by her surviving her husband, having made a will
 
 dam sola:
 
 and it must be confessed that contradictory opinions have been given on the point. In its investigation, while I readily admit the propriety of the rule
 
 stare decisis,
 
 I wmuld yet respectfully examine and weigh the reasoning advanced in support of the different opinions.
 

 In support of the idea that the will is effectually and completely revoked by marriage, so that survivorship of the wife does not republish it, the reasoning, when condensed, appears to be as follows.
 

 It is essential to the nature of a will that it should be ambulatory and liable to be altered or revoked at any
 
 *300
 
 period during the life of testator. A woman by marriage disables herself from making, altering, or revoking a will, and therefore upon marriage the instrument needs one essential characteristic of a will, viz. liability to alteration, or revocation, and of course must cease to be a will, and having once ceased, continues to be no will whether the wife survive or not.
 

 This argument, in fact, begs the question; it is founded on a fallacy; it assumes that, because at one period, viz. during coverture, it loses the character of a will, it loses it at another period, viz. after coverture has ceased. Now the very question in controversy is, whether the paper is to be considered in the same light
 
 during
 
 cover-ture, and
 
 after
 
 coverture. It is an admitted point, that during coverture the will is revoked, and the reason has already been assigned;, but that reason can apply with no propriety to the paper after the coverture has ceased. The truth is, that the argument above can never prove more than that
 
 during coverture
 
 the will is revoked, and if the wife dies during coverture she dies intestate. But the ground taken in it really supports the idea, that the will is established again by the survivorship of the wife; for it is said that the will is ambulatory; this is true, and this character belongs to it until testator’s death. If then, during testator’s life, its ambulatory character should be
 
 suspended,
 
 not
 
 destroyed,
 
 by a technical reason, viz. that the wife has no wall because of coverture, it would seem that when this technical reason was removed by husband’s death, it should again be ambulatory on the obvious principle that
 
 cessante ratione cessat et ipsa lex.
 

 Again, the case now before the Court serves to illustrate the ground on which, in one class of cases, the survivorship of the wife gives validity to her will made
 
 dum sola;
 
 I mean that class in which no change in testator’s situation has been produced by marriage. Thus we see
 
 Mary Spruill
 
 while sole selecting the objects ef her benevolence, and distributing her bounty
 
 *301
 
 .among them; in this act she has furnished conclusive evidence, that in the situation in which she stood when unmarried, she desired to make such and such a disposition of her estate; we find her years afterwards in cisely the same situation. The law will scrupulously respect her desires in disposing of her property, as it will those of every person, provided the ceremonies required in declaring those desires he complied with, and it is unwilling that she should die intestate. Is it not a very fair, nay the only rational presumption, that as under certain circumstances she devised or bequeathed in one way, that under precisely the same circumstances she would wish to make precisely the same disposition of her effects, more especially as a contrary desire might so easily have 'been expressed by a new will, and as the intention not to die intestate under these circumstances has so plainly been expressed by the will already made?
 

 An attempt has been made thus far, to consider the question without reference to authority; but this is not wanting in support of the position, that upon the death of the husband the will is republished. A leading and very early case, in which the subject is referred to, is
 
 Brett
 
 v.
 
 Regden, (Plowd.
 
 343
 
 a.)
 
 in which it is thus put: a feme sole makes her will the 1st May, and gives land thereby, and afterwards on the 10th of May she takes husband, who dies on the 20th of May, and afterwards the woman dies on the 30th of May; the devise is good, and yet if it should be considered according to the time of the date, the will would be countermanded by the es-pousals; but it is not so, for
 
 it does not take effect until her death,
 
 at which time she was discovert, as she was at the time of making the will, and the intermarriage shall not countermand that
 
 which was of no effect in her life time.
 
 The last reason, viz. that a paper, which must owe its validity to the death of its maker, and dui’ing his life time is of no effect, cannot be affected by any circumstance arising before it is of effect, is to my mind
 
 *302
 
 unanswerable. This respectable authority is sustained by
 
 Godolphin, (Orph. Leg. fo.
 
 29. § 1.) and the case of
 
 Forse
 
 v. Membling, (4
 
 Co. R.
 
 61.) To which I would add, ^rfthout intending to quote the book as an authority, for it is but a compilation though a most respectable one, the same doctrine is laid down by Cruise, title
 
 Devise, ch.
 
 6. §
 
 47.
 
 I am therefore of opinion that the will of
 
 Mary
 
 Wood, made when she was
 
 Mary Spruill,
 
 is good and eifectual to pass both realty and personalty, and that a new trial should be granted.
 

 Henderson, Judge
 

 This is a question on which the elementary writers differ, and I cannot find a single, common law adjudication on the point. We must therefore resort to first principles to decide the case. A last will being in its nature revocable and ambulatory, and being supposed to contain the last wishes of the maker as to the disposition of his property after his death, requires that the maker should be a free agent, not only at the time of making the will, but also at the time of death; otherwise the power of revocation, which is incident to the very nature of a will, could not bo exercised. But I can sec no reason why this free agency should continue uninterrupted from the making to the time of death. I think tlie reason of the thing is answered, if it existed at the time of death, and that a temporary want of free agency, such as is effected by the marriage of the maker, being a feme, operates only as a
 
 suspension,
 
 and not as a
 
 revocation.
 
 If she dies during the marriage, the will is considered as revoked, for if she had desired to revoke it, she had not a tree will to do it, the law, therefore, docs it for her. But if she survives her converture, and does not revoke it, there is no necessity lor the law doing it, for had she desired it, she could have done it herself; marriage in this respect operating like captivity. And it seems agreed by all, that if a person makes a will and is after taken captive, it operates only as a suspension of
 
 *303
 
 the will, and if the maker dies in captivity, the will is revoked, but if he regains his liberty, it sets up his will ° A again without any republication. But it is said that marriage is different from captivity, because it is voluntary and captivity involuntary. It is true there is that dif.ference; hut I cannot see that different results, not connected with the question whether the situations were voluntarily or involuntarily assumed, should be drawn from it. If the want of the
 
 power of revocation
 
 was inflicted as a
 
 punishment
 
 for crime, then it would be all important to make this difference in the results; but we know that it is not. The want of that power, to wit, of revocation, arises from w ant of free agency in both cases; and it is, I think, restored by the restoration of free agency in both cases. This case has also been compared with revocations, or rather ademptions, by a feoffment or grant of the lands devised, although the devisor takes back the same estate in the lands. The cases, I think, are very unlike each other. A devise of lands is looked upon as a conveyance, not as a testament is in the civil law, an appointment of an heir; therefore a person must have that which he devises, as he must have that which he. grants, and there can be no estoppel in wills as in deeds, by which the devisee could take as in case of a deed, for estoppels operate only where there are
 
 parties,
 
 and there are
 
 no parties in a will.
 
 The will being ambulatory and revocable, it is necessary that the devisor should not only have the power to devise, that is to grant when he makes his will, but that he should have the uninterrupted power up to the time of his death; by power here I mean ownership in the land. If, therefore, he disposes of the land, the will is revoked, because he has not the thing which is attempted to be granted; and being revoked, a repurchase of the land does not set up the will again, for that can be done only by republication, and a repurchase bears no analogy to a republication. The will, such case, is revoked, not because the devisor intended
 
 *304
 
 tevoke, but because he had not
 
 the power to devise,
 
 to grant, for he could not grant that which he had not. The revocation, therefore, in such case, is not dependant on pree agency. for jf jn the same conveyance devisor takes back the same estate, yet it is a revocation, which shows that the revocation does not depend on intent. I have used the term revocation in deference to authority, but it is. rather an ademption, and therefore I have not noticed the marriage settlement; for no question growing out of it can arise upon the probate of a will, and can only arise in- contracts about the property devised between the heir and devisee. I therefore think that the testatrix, being unmarried at the time of making her will, and at the time of her death, the will is a good one, that is, not revoked. For these reasons I am of opinion that a new trial should be granted.